"To any lawful officer:
"Whereas, John Philips personally appeared before me, Cornelius Dowd, Sr., one of the justices of the peace in and for said county, on on this 2d day of September, 1837, and made oath that Daniel (464) Muse, on the 27th day of August last past, did bring to Friendship meeting house, in said county, cider and ginger cakes, and did, within one hundred and fifty yards of said meeting house, on the day aforesaid, sell cider and cakes, many persons being then and there assembled for divine worship, contrary to the form of the statute in such case made and provided: You are therefore commanded to take the body of said Daniel Muse, if to be found in your county, and have him before some justice of the peace of said county, within, etc., to answer *Page 365 
the State to the use of the poor of said county, of a plea that he render the sum of ten dollars, a penalty incurred by the said violation of said statute."
On the foregoing warrant the defendant was convicted before the magistrate, and upon appeal was found guilty by the jury in the Superior Court, at Moore, on the last circuit, before his Honor, Judge Pearson. After verdict the defendant moved in arrest of judgment: first, because the warrant did not name any person to whom the defendant sold; and secondly, because the act of Assembly creating the offense was unconstitutional. But his Honor refused the motion and gave judgment against the defendant, from which he appealed.
The counsel for the defendant in this Court has very properly abandoned the second ground stated in the record. There can be no doubt that the Legislature hath power, and that there is an obligation in sound morals and true policy on that body to protect the decency of divine worship by prohibiting any actual interruption of those engaged in worship, or any practices at or near the place, in which the Legislature may see a tendency to produce such interruption.
The Court is also of opinion that the warrant is sufficient (465) without naming any person as a vendor of the articles sold. It would not be if the penalty was incurred by each and every act of sale, for then the sale ought to be set forth in its particulars of time, place, and persons, in order that the defendant might conveniently plead to a second prosecution. But the provisions of the statutes under consideration are of a different nature. They do not give a penalty for each act of sale, nor in any sale necessary to constitute the offense. The object of the Legislature was to prohibit the first step towards an establishment that might draw the idle, thoughtless or dissipated from the opportunities of wholesome edification to be derived from uniting in or witnessing divine worship. An attempt, therefore, to sell spirituous liquors or other like articles, or erecting a booth or a stand adjacent to a place of worship, for the purpose of such selling or giving away, is each an offense within the words of the act of 1808, 1 Rev. Stat., ch. 99, sec. 9. If a selling be not necessary to constitute the offense, a fortiori it need not be stated to whom a sale was made, or whether it be made to one person or to fifty different persons, there is, under this act, but one offense committed, and but one penalty thereby incurred, on the same day. *Page 366 
In addition to the reasons urged in the Superior Court the arrest of judgment is insisted on here, for the further reason that the warrant concludes "against the form of the statute," whereas it should have been"statutes." Upon looking into the acts of Assembly, and the authorities to be found in the books the Court thinks this objection well founded.
We understand the rule to be that when an act cannot be made out to be criminal or a penalty to be incurred, without reading more than one statute it is then necessary that the indictment or declaration should run"contra formam statutorum." Such is the case here. The act of 1800 (Rev. St., c. 564), is restricted to the church or meeting house yard, and would not include per se the present case. The act of 1808 (Rev. St., c. 761), is in amendment of the former, and enacts "that the said act shall extend to and exclude all places within half a mile, etc., and every person offending, etc., shall be subject to the same penalty, as if the act was committed at church or meeting house yards, and in every respect the like proceeding shall be had thereon." Neither will this act, (466) looked at by itself and not helped by the proceeding one, sustain this proceeding, because it expressly refers to the first act, and thus adopts its provisions; and without knowing them the latter act cannot be perfectly understood. As we conceive the law to be, therefore, the process ought to have concluded in the plural.
It is said, however, by the Attorney-General, that this is not matter of substance and is cured by the verdict. But the authorities appear clearly to be the other way. The conclusion, "against the form of the statute," when the proceeding is founded on a statute, is substantial and indispensable. Scroter v. Harrington, 1 Hawks, 192; The Buncombe TurnpikeCompany v. McCarson, 1 Dev. and Bat., 306. Until the law shall be altered by a statute (as has been recently done in England) the same reasons require, as a matter of substance, a conclusion in the plural, where it is proper at all. The reason why the conclusions, contra formam statuti orstatutorum are respectfully necessary, is that the pleadings should show the grounds of fact and of law, on which the accusation is founded. Hence, formerly, the penal statute was recited, and consequently, if it was necessary to have recourse to two statutes to show that the fact charged was a crime, it was requisite to recite both statutes. When the reference to the statute or statutes in the general terms now used was permitted it became the duty of the pleader in each case to conclude properly, according to the creation of the offense, being by one statute or two, just as much as it was before, in similar cases, to recite one or both of the statutes.
Upon the supposition of the foregoing opinion being entertained by the Court, the Attorney-General moved the Court to allow the requisite amendment to be made. That, we think, may be done under the act of *Page 367 
1824, and the Revised Statute, c. 3, ss. 1 and 10. Grist v. Hodges, 3 Dev. R., 199. The amendment does not change the issue between the parties and is according to the right and justice of the matter found by the jury. In ordinary cases this amendment would be allowed only on the payment of the costs, for the reasons given in the case cited. But as the State does not pay costs in any case the amendment will be allowed, and a judgment entered for the State for the penalty, (467) upon condition that no costs are claimed in either of the courts against the defendant. The result is that the defendant must pay the penalty and his own costs; so that the effect of the amendment is merely to save the parties the trouble, expense, and delay of further litigation, leaving the costs to fall just as they would if the judgment were arrested.
PER CURIAM. Amendment allowed and judgment affirmed.
Cited: S. v. Sandy, 25 N.C. 575; Washington v. Frank, 46 N.C. 441;Justices v. Simmons, 48 N.C. 189; S. v. Foy, 82 N.C. 681; S. v.Stovall, 103 N.C. 418; S. v. Moore, 104 N.C. 717; Caldwell v. Wilson,121 N.C. 458; S. v. Sharp, 125 N.C. 632.